Jeffrey **DARLIN**

v.

**CONSOLIDATED RAIL CORPORATION.**

No. Civ.A. 99–CV–6604.

United States District Court, E.D. Pennsylvania.

June 6, 2000.

John E. Savoth, William L. Keller & Assoc., Philadelphia, PA, for Jeffrey Darlin, plaintiff.

Brian T. Ortelere, Pepper, Hamilton & Scheetz, Phila, PA, Michael J. Tierney, Pepper Hamilton LLP, Philadelphia, PA, for Consolidated Rail Corporation, defendant.

### *MEMORANDUM*

LUDWIG, District Judge.

Defendant Conrail moves for summary judgment. Fed.R.Civ.P. 56.[1] Jurisdiction is federal question. 28 U.S.C. § 1331. *See* Order and Memorandum, March 14, 2000, Order–Memorandum, April 13, 2000, and Order, April 13, 2000. (denying plaintiff's motion to remand and defendant's motion to dismiss, together with plaintiff's motion for reconsideration).

In July, 1998, defendant Conrail, as part of a pending merger, offered certain managerial employees a "stay-on bonus" if they remained past their termination dates, until the reorganization was completed.[2] A three-page "Summary of Non–Agreement Benefits in Connection with the Change in Control of Conrail" defined eligibility as follows:

> All employees who hold a non-agreement position as of March 7, 1997, and who do not have an individual severance agreement with Conrail are eligible for the following benefits, all or a portion of which may be made available as supplemental under the Conrail pension plan.
>
> In the event you are terminated (or constructively terminated) without cause within 3 years of the date CSX/NS are permitted by the [Surface Transportation Board] to assume control over Conrail's railroad operation (the "Control Date"), or the date the [Surface Transportation Board] authorizes the removal of Conrail's current Board of Directors, if earlier, estimated at mid–1998, you will be eligible to receive a special pension benefit, subject to the execution of a release and confidentiality agreement.

Complaint, Exh. B.

In addition, the Summary stated:

> ... the foregoing is only a summary of the benefits that will be provided and that this document is not a contract between you and the Company, CSX or NS. The Company is in the process of implementing each of the benefits described above. Your rights to the benefits will be governed by the final documents, and in certain cases will be

---

1. "[S]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trail and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997).

2. Depending on length of service, an employee could receive up to a maximum of 24 months of base salary.

subject to your signing release and confidentiality agreements.

*Id.*

Plaintiff, an eligible employee, decided to participate in the stay-on program. On April 19, 1999, plaintiff received notice of termination effective May 31, 1999. Attached was further information on the plan, together with a draft of a release of all claims against Conrail, including those under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq. See* Complaint, Exh. 3. Plaintiff had a pending FELA claim resulting from an injury that occurred on June 19, 1996, and was unaware that a waiver of FELA claims would be required.

On June 21, 1999, plaintiff received a separation package that included the release. After consulting with counsel, he removed the reference to FELA claims, signed the release, and returned it. The redacted release was not acceptable to Conrail, and plaintiff decided not to execute the original. Following this impasse, plaintiff filed suit in state court on the grounds of promissory estoppel and fraud.

Defendant removed the action here premised on ERISA jurisdiction under 29 U.S.C. § 1001 *et seq.* and moved to dismiss, citing ERISA preemption. On April 13, 2000, the fraud claim was dismissed as expressly preempted by ERISA § 504, and the claim for promissory estoppel was transformed into an equitable estoppel claim as completely preempted under ERISA § 502(a). Order, April 13, 2000. Defendant now moves for summary judgment on the equitable estoppel claim. Before discussing the motion, two issues raised in plaintiff's response need to be resolved.

■ The first issue is whether this action falls under § 502(a)(3), 29 U.S.C. § 1132(a)(3), or whether, as plaintiff now argues, it is more properly considered to be under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B) grants a plan beneficiary an express con-

tract action "to recover benefits due to him under the terms of his plan" 29 U.S.C. § 1132(a)(1)(B). Essentially, actions under § 502(a)(1)(B) are for breach of contract; but here, no contract exists. The Summary of Benefits states that "this document is not a contract"—and later, when the final documents were submitted to plaintiff, he did not agree to the terms and refused to sign them. Since no contract exists, this claim must proceed on the theory of equitable estoppel under § 502(a)(3). Order, April 13, 2000.

■ The second issue is whether the release sought by Conrail was in violation of the FELA inasmuch as plaintiff would have been required to forego his pending FELA claim in exchange for the plan benefits. "Any contract, ... the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void ..." 45 U.S.C. § 55. This section was recently interpreted by our Court of Appeals in *Wicker v. Consolidated Rail Corporation,* 142 F.3d 690 (3d Cir.1998).

... a release does not violate [FELA] provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed.

*Wicker,* 142 F.3d at 701.

Here, unlike *Wicker,* the claim was pending prior to the proposed release, and, therefore, the risks involved were known to the parties. However, the release was not the result of negotiation between plaintiff and Conrail, but instead was submitted to him as a "take-it-or-leave-it option"—an approach that *Wicker* explicitly disapproved. *Id.* at 699, *citing Babbitt v. Norfolk & Western Ry. Co.,* 104 F.3d 89 (6th Cir.1997). In *Wicker,* Conrail argued that the releases "were all negotiated as part of a settlement of an existing claim—each was the result of arms-length bargaining between plaintiff, his counsel, and the de-

fendant railroad," in support of the release's validity. *Wicker,* 142 F.3d at 699. Here, however, since plaintiff did not sign the release, its validity is moot.[3]

■ To recover on a theory of equitable estoppel, plaintiff must show: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the misrepresentation; and (3) extraordinary circumstances. *International Union v. Skinner Engine Co.,* 188 F.3d 130, 151 (3d Cir. 1999). Defendant contends that these elements are not present, given the general and conditional nature of its Summary of Benefits.

In *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 58 F.3d 896, 907 (3d Cir.1995), reliance on a conditional statement was held to be unreasonable as a matter of law and, therefore, not the basis for an equitable estoppel claim under ERISA. *Retiree Medical,* was a class action involving employee retirement plans and the employer's assurances that the plan benefits were for life. *Id.* at 898. However, the plans contained a reservation of rights, in which the company "reserve[d] the right to change [the plans] or end them at any time." *Id.* at 900.

■ Here, the plan Summary also included an unambiguous reservation of rights clause, conditioning the benefits in some instances upon a confidentiality agreement and a release. However, the conditional language relates not to the supplemental benefits, but instead to inclusion within the plan itself. In *Retiree Medical,* the rights reservation empowered the employer to change or even terminate the plan benefits, while here the offer of the supplemental benefits was unconditional.

Therefore, the issue of what was reasonable reliance must be focused on the terms of the required waiver. This determination involves what an employee could reasonably have expected to be includable in the waiver as a prerequisite of the special benefits.[4]

Defendant's summary judgment motion must be denied. No Rule 56 materials have been presented other than defendant's affidavit that the Summary of Benefits is authentic and was sent to plaintiff. It can not be said as a matter of law that plaintiff's participation in the "stay-on bonus" program constituted unreasonable reliance. While plaintiff has the burden of proving at trial his entitlement to equitable estoppel, that issue must be decided by the fact-finder.

3. The potential invalidity of the release under FELA may be probative of reasonable reliance under a claim for equitable estoppel.

4. An evaluation of reasonableness must depend on the circumstances—including the relationship of the scope of the waiver to the proposed benefits, the time interval between the Summary of Benefits and the submission of the release, the reasons for not apprizing

stay-on employees that existing FELA claims would have to be forfeited, and the potential illegality under the FELA. For plaintiff to have relinquished his FELA claim on which he later received a $6 million verdict as a condition of obtaining, at most, two years' salary would have been tantamount to receiving "a bowl of porridge."